NEW ORLEANS & N. E. R. Co. *v.* CHRISTINE HUMPHREYS.

[65 South. 497.]

NEGLIGENCE. *Trespassers. Injuries. Care after injuries.*
> Where a railroad company takes charge of a trespasser who is injured on its tracks without its fault, it owes to him no higher duty than that dictated by ordinary or common humanity.

APPEAL from the circuit court of Lamar county.
HON. A. E. WEATHERSBY, Judge.

Suit by Mrs. Chrstine Humphreys against the New Orleans & Northeastern Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson* and *A. S. Bozeman,* for appellants.

The only duty owing by a railroad company to a trespasser is not to wantonly or wilfully injure him. *Railroad Co.* v. *Burnsed,* 70 Miss. 473; *Railroad Co.* v. *McAfee,* 71 Miss. 70, and many other Mississippi cases announcing this rule.

Where plaintiff was injured by being struck by an engine, without fault on the part of the railroad company, the latter was not liable by reason of the fact that its servants did not use their best judgment in affording

plaintiff necessary assistance after the accident. *Griswold* v. *B. & M. R. R. Co.,* 183 Mass. 434, 67 N. E. 354. A railroad company assuming charge of an injured trespasser, is charged with no higher degree of duty to him than that of ordinary humanity—common humanity. *Dyche* v. *Railroad,* 71 Miss. 361. See, also, for a like rule applied to a passenger injured by his own negligence, the case of *Railroad Co.* v. *Byrd,* 89. Miss. 308.

In furnishing medical or surgical aid for an injured person, the whole duty of the railroad company is performed when it employs a person of ordinary competence and skill in that profession; and having done so, it cannot be held liable for the carelessness or negligence of such surgeon in the performance of his duties as such. *South Fla. R. Co.* v. *Price,* 32 Fla. 46, 13 So. 638; *Atlantic Coast Line R. Co.* v. *Whitney,* 56 So. 937; *Dyche* v. *Railroad,* 79 Miss. 361; 3 Elliot on Railroads, sec. 1388. It would be absurd to insist that not only the selection of a physician and surgeon should be prudent, but that the company should guarantee that the surgeon selected would make no mistake and be guilty of no negligence. The very fact that there was required of a surgeon, in the line of his duty, the possession of a superior degree of skill and of knowledge of medicine, precludes the possibility that the officers or employees of a railroad company should exercise a supervisory control and direction of the time when and the mode in which the necessary surgical operation should be performed. *C. B. & Q. R. Co.* v. *Howard,* 45 Neb. 570, 63 N. W. 872. The above doctrine is peculiarly applicable to cases where such attendance is furnished by the railroad company at its own expense, and without cost to the injured person. *Pittsburg, etc., R. Co.* v. *Sullivan,* 141 Ind. 83, 27 L. R. A. 840, 50 Am. St. Rep. 314.

*Tally & Mayson,* for appellee.

Counsel complains of the action of the court in its refusal to exclude the testimony offered by plaintiff and

to direct the jury to return a verdict for the defendants.
The action of the court was, as we think, eminently cor-
rect. This was a case peculiarly for the jury, as it was
for it to say, under all the instructions in the case,
whether or not the deceased received at the hands of these
appellants, that treatment that common humanity dic-
tates that the unfortunate and helpless should receive
from the hands of parties having control over them after
they are in a situation that they can render no assistance
to themselves.

Counsel cites as supporting his contention of nonlia-
bility on the part of the defendants *Griswold* v. *B., etc.,
R. R. Co.,* 183 Mass. 434, 67 N. E. 354, but the doctrine
announced in this case is directly at war with that pro-
mulgated in the Dyche case, *supra.*

It is said in the monographic note to *Union P. R. Co.*
v. *Cappier,* 69 L. R. A. 513, at pages 534 and 536 of the
note that the court in *Griswold* v. *Boston & M. R. Co.,* 183
Mass. 434, 67 N. E. 354, unsuccessfully attempts to dis-
tinguish *Central R. R. Co.* v. *State,* 96 Am. Dec. 545, from
the Dyche case. The court refers to the case of *Dyche*
v. *Vicksburg S., etc., R. R. Co.,* 79 Miss. 361, 30 So. 711,
*supra,* but repudiates its authority and attempts to dis-
tinguish *Northern Central R. Co.* v. *State,* 29 Md. 420, 96
Am. Dec. 545, *supra,* in a manner not warranted by the
report of that case, as already pointed out. The atten-
tion of the court is specially invited to this exhaustive
note beginning on page 534 and running through page
536 where all the authorities on the subject appear to
have been collated with great care. While it is true, as
demonstrated by the author of the above note, that in
some courts, a different rule prevails, yet it is asserted
that the true rule is to be found in the case reported in
96 Am. Dec. and in the Dyche case, *supra.* We, therefore,
confidently submit that in order for appellants to secure
a reversal, the Dyche case must be overruled.

The two propositions relied upon by the appellee in
this cause to sustain the judgment rendered in her favor

by the lower court are as follows: First, although the
railroad company was not in fault in inflicting the origi-
nal injuries upon Leslie Humphreys, whom it is conceded
was a trespasser, still the railroad company, after he
had been injured, was under legal duty, as well as moral
obligation, to give him proper care and treatment which
was proper and necessary under the circumstances of the
case; second, even conceding that the railroad company
was under no original legal duty, or obligation, to ren-
der proper and necessary care and attention to Leslie
Humphreys after he was injured, it is unquestionably
correct, as a legal proposition, in view of all the au-
thorities, that having undertaken the care of the wounded
man, it was then the legal duty and obligation of the
railroad to discharge this duty and responsibility with
proper care and attention under the circumstances of the
case.

First, I will present to the court the proposition above
stated, that the railroad company was under, not only a
moral obligation resting on the commonest principles of
humanity, but under a distinct legal obligation to give
this unfortunate man proper attention after it was found
that he had been injured and disabled in this railroad
accident; and this proposition assumes that the railroad
company is not liable for the original injury inflicted
upon him.

The idea that the railroad company is under no duty,
as a legal obligation, to a trespasser under any circum-
stances, is a total misconception of the legal doctrine and
principles applicable to this class of cases. On the con-
trary, the best considered cases, and the great weight of
authority, and the whole body of the reasoning on the
subject *a priori* is, that a railroad company is under a
large measure of duty and obligation of a legal character
to trespassers who are ejected from their trains and who
have been injured by railroad accidents without the fault
of the railroad company. The universal doctrine is, that

while the railroad company has a right to eject a tres-
passer from its train, it is under legal obligation and
positive duty to remove him or eject him in such pru-
dent and reasonable manner as not to inflict any injuries
upon him. It is also, I respectfully submit to the court,
not only in accordance with the *a priori* principle of jus-
tice involved as well as the ordinary consideration of
common humanity, but it is established by the very best
considered decision on this subject, that a railroad com-
pany is under this measure of legal obligation and duty
to render proper care and assistance to a trespasser who
has been injured without the fault of the railroad com-
pany.

This court has placed itself in line with the best con-
sidered cases and doctrine on this subject in a case which,
in legal principle, is identically in point with the case
now under consideration, the case of *Dyche* v. *V. S. & P.
R. R. Co.*, 79 Miss. 361; *Railroad* v. *Byrd*, 89 Miss. 308;
*Railroad Company* v. *State*, 29 Md. 439 and 442, and the
*Baltimore & Ohio Railroad Company* v. *State*, 41 Md.
288; *Weightman* v. *Railroad Co.*, 70 Miss. 563; 70 Miss.
563, 567, 568; 81 Ky. 624, 635; *Johnson* v. *C. R. & P. R.
R. Co.*, 58 Iowa, 348; 58 Iowa, 348, 351, 352; *Klein* v. *C.
P. R. R. Co.*, 37 Cal. 401; 37 Cal. 400; *Railroad Company*
v. *State to use of Price*, reported in 29 Md. 420, 96 Am.
Dec. 545, 552; Beach on Contributory Negligence (2 Ed.),
page 277, 215; *Waldros* v. *R. R. Co.* (Ky.), 54 L. R. A.
923; *Louisville, C. & St. L. R. R. Co.* v. *Sullivan*, 81 Ky.
624; *L. & N. R. R. Co.* v. *Ellis*, 97 Ky. 679; *L. & N. R.
R. Co.* v. *Logan*, 88 Ky. 232; S. C. 3 L. R. A. 80.

Second, even conceding that the railroad company was
under no original liability to care for this injured man,
there is no doubt whatever of the correctness and sound-
ness of the proposition, that when the railroad, or its em-
ployees, have actually assumed the duty and responsibil-
ity of taking the charge and care of an injured person,
although he is a trespasser and injured without the fault

of the company, the company is then, having assumed the responsibility, under duty to furnish reasonable care and proper treatment for the injured person: This proposition is stated in the text of 33 Cyc. of Law, 774.

I also call the attention of the court, on this proposition, to the case of *Union Pacific Railroad Company* v. *Cappier,* 66 Kan. 649 (S. C. 72 Pac. 281; S. C. 69 L. R. A. 513), and *N. C. Railroad Co.* v. *State,* 29 Md. 421. In presenting these questions to the court I have preferred to state, as the main proposition relied on for the appellee in this case, that according to the best considered cases and the entire weight of reasoning, as well as in view of the *a priori* principles of justice and humanity, that the railroad company is under duty, a legal duty as well as a moral obligation of humanity, to take care of a wounded or injured trespasser; but as I have presented this case to the court, it is clear that even upon the doctrine conceded by the decision of the Massachusetts court in the Griswold case, the railroad company in this present case is liable upon the distinct ground that they assumed the duty and responsibility of taking care of this injured trespasser, and therefore they are held to a proper and reasonable performance of their duty to be determined by a jury under all the circumstances of the case.

COOK, J., delivered the opinion of the court.

Appellee sued the appellant railroad company for damages for the neglect and want of care on the part of the railroad company for her husband after he had been injured by a railroad accident. The jury returned a verdict in appellee's favor for five thousand dollars, and from a judgment based upon this verdict this appeal is prosecuted.

It is not claimed that the railroad company was in any way responsible for the accident, or is any way liable for the original injury to appellee's husband, and it is con-

107 Miss. 26

ceded that he was a trespasser at the time he received the hurt. When the passenger train of appellee reached Poplarville, at ten o'clock on the night of the 5th of April, 1912, Mr. Humphreys was found on the pilot or "cowcatcher" of the locomotive with a shattered leg, absolutely helpless, and covered with the excrement of some animal, presumably a cow or a horse. The theory is that a few miles south of Poplarville the locomotive struck a cow or horse, which was thrown on the pilot and caused the injury to Mr. Humphreys, who it is conjectured was stealing a ride. His leg was shattered from the knee to the foot. When it was discovered that Mr. Humphreys was injured, two of the employees of the railroad assisted him from the pilot, and carried him to the depot platform, and laid him down there. Some bystanders removed the injured man to a truck soon after he was placed on the platform. In removing him from the pilot of the locomotive to the platform two railroad employees each took him under each arm, and this caused his wounded leg to drag on the ground, doubtless causing him much pain. It is sure that the injured man suffered excruciating pain, and that he begged the railroad employees to take him to Hattiesburg, his home.

It appears that the railroad people thought it best to leave him where he was, and to call a physician to treat him there. At any rate, they refused to take him to Hattiesburg on that train, but did send for a physician, who arrived on the scene about the time, or soon after, the train proceeded on its way. The physician took charge of the injured man and administered opiates to relieve his suffering, but did not do anything more. It seems that a fast freight train bound for Hattiesburg was due to arrive at Poplarville about thirty minutes after the passenger train, but on that night the freight was something more than an hour late. When the freight train arrived, Humphreys was put upon the train and carried to Hattiesburg, accompanied by the physician.

When he reached Hattiesburg, Homphreys was placed in the hands of his friends and taken to the hospital, where his leg was amputated. He died in a few days after the operation.

It is claimed that, if Humphreys had been carried to Hattiesburg on the passenger train, he would not have died. To prove this, a physician testified that the injured leg should have been removed as early as possible after the injury was discovered, and, in his opinion, the man would have survived, had he been carried on to Hattiesburg and placed in the hands of competent surgeons. This physician also said that it was highly important that the filth should have been removed at once. The witness testified at great length, and described in detail how the injured man should have been treated. The evidence shows that Humphreys did not receive the treatment which the expert said was necessary.

The theory seems to be that when the employees of the railroad removed the wounded trespasser from the pilot of the locomotive and placed him on the platform, it became the duty of the railroad company to do everything possible to insure the comfort and safety of the trespasser. At the most, if the railroad company assumed charge of the injured man, it was charged with no higher duty to him than ordinary or common humanity. It is clear that the train was not equipped to care for a man injured as this man was, and it is also clear that he could not have had the care of a skilled surgeon if he had been taken away on the passenger train. It will be assumed that train crews could not know what was best for the man, and surely, when they called a physician, who it is presumed did know, and placed him in charge of the physician, it cannot be said that they did not treat him with common humanity.

From our standpoint, the railroad employees did what was apparently the proper thing to do; and, even if they did not, there is nothing in their actions to authorize one

to believe that they ignored the dictates of common humanity. In reversing this case we have assumed that the railroad company was under duty to treat the trespasser with ordinary humanity, and, further, that it assumed charge of him when they took him from the locomotive. If a mistake was made, it was a mistake of judgment, and for this mistake the railroad is not liable. The peremptory instruction should have been given.

*Reversed and remanded.*