KURN *et al. v.* DENSON.

(Division A.    Nov. 2, 1942.)

[10 So. (2d) 198.    No. 35064.]

D. W. Houston, Sr. & Jr., of Aberdeen, and M. G. Roberts, E. G. Nahler, and A. P. Stewart, all of St. Louis, for appellants and cross-appellees.

Frank S. Leftwich, of Aberdeen and James A. Cunningham, of Booneville, for appellee and cross-appellant.

**McGehee, J.,** delivered the opinion of the court.

The administrator brings this suit against the appellants, as trustees in bankruptcy, operating the St. Louis-San Francisco Railway system in interstate commerce, seeking to recover damages under the Federal Employers' Liability Act, 45 U. S. C. A., Sec. 51 et seq. because of a fatal injury sustained by N. F. Egger, a brakeman, whose body was caught and mashed between two box cars and the pelvis bone crushed, while he was at work about the duties of such employment on a freight train at Aliceville, Alabama, traveling en route to the city of Amory, Mississipi, and which resulted in the death of the said Egger, due to his suffering from the shock caused by the injury, before such train could arrive at this intended destination, where he was then being carried for surgical treatment and hospitalization.

Appellee relies for a recovery of damages upon the alleged negligence of the railway company in causing the injury complained of, and also upon its alleged failure

to observe the dictates of common humanity in getting this injured employee to a hospital for treatment with reasonable promptness after undertaking to remove him from the freight yard at Aliceville, Alabama, immediately after the accident, without regard to whether or not the said defendant was liable for the initial injury to said employee.

The court below granted a peremptory instruction in favor of the railway company against liability on the first ground above stated, but submitted the case to the jury under instructions as to whether under all the facts and circumstances the humanitarian doctrine thus invoked made it incumbent upon the railway company to exercise greater care to preserve the life or promote the comfort and well-being of the injured man than was exercised by the train crew on the occasion complained of.

There was a verdict in favor of the appellee plaintiff for $5,000, from which the defendant appeals, and there is a cross-appeal by the plaintiff from the trial court's action in holding as a matter of law that the defendant was not shown to have been negligent in connection with the accident whereby the initial injury was sustained.

We deem it necessary to a proper understanding of the case that we consider in their reverse order the questions thus presented for decision.

On the occasion of the accident the freight train was traveling in a general northwesterly direction. Before reaching the depot at Aliceville, it was necessary to stop for the crossing of the Alabama, Tennessee & Northern Railroad, which runs approximately east and west. Thereupon, the train was cut in two parts by the head-brakeman Egger, and several of the cars were carried north of the crossing and left between it and the switch where a leg of the wye leads off in a southwesterly direction from the main line, the engineer having stopped the train at the point where this brakeman had signaled for him to do so for that purpose. He then cut the engine

loose from the north end of this cut of cars immediately in front of a C. & G. car, so as to leave an insufficient clearance between it, when thus left on the main line, and the wye switch for a person to pass the north end thereof while riding on the east side of another box car when the latter was being backed southward onto the west leg of the wye from the main line during a switching operation without such person incurring the danger of being caught and injured between the two cars. The accident occurred at night when the said brakeman was thus riding on the south end of such a car which had been picked up elsewhere on the yard after the engine had been thus cut loose from the C. & G. car and was being backed onto the wye track, at a time when no other member of the train crew knew of the insufficient clearance which he had left between the C. & G. car on the main line and the cars that were being backed onto the wye, except that another employee, Gregory, who was serving as brakeman-flagman on the same train and whose duties had called him elsewhere on the yard prior to this particular movement of the train, was then riding on the west side of the south end of the same car about eight feet from Egger and saw through the darkness the bulk of the C. & G. car for the first time when they got within forty or 50 feet thereof. He immediately gave a cautionary slow signal to the engineer, and presently, when he realized that there might be insufficient clearance for Egger to pass safely through the trap which he had unfortunately set for himself, gave the "washout" or emergency signal, with the result that everything possible was done to stop the train without delay. It was too late; and when the brakeman, Egger, who had doubtless realized his perilous predicament as early as Gregory did, undertook to swing around in front of the car on which they were riding, he was caught between it and the C. & G. car, resulting in the fatal tragedy hereinbefore described.

The foregoing version of the material circumstances surrounding the accident was given by the said Gregory, who was introduced by the plaintiff as the only eye-witness thereto, or person who ever claimed to know anything about how the injury occurred. Consequently, no negligence whatsoever was shown on the part of the railway company in connection therewith. Immediately before he was caught between the two cars, Egger had thrown the wye switch at the scene of the accident, climbed back onto his train, assumed the risk of the impending danger, and later explained to Gregory that "I thought that I could swing around to the front of the car."

But it is urged that Gregory should have made an outcry of warning. It is obvious, however, that such warning would have only served to attract attention to a situation on which the mind of Egger was already fixed and that it could have served no useful purpose. Moreover, Gregory only had sufficient time to give the required signal to the engineer after he realized the danger then being instantly encountered.

The proof under the second count of the declaration disclosed that as soon as the injured man fell to the ground, Gregory went to his aid, summoned the other members of the crew, and then went straightway to telephone for the local physician, Dr. S. R. Parker, who answered the telephone promptly at his home and reached the scene of the accident before Gregory had time to return. Dr. Parker, a reputable and competent physician, took charge of the patient at the request of the train crew, and, after first considering the advisability of carrying him to his office for examination and treatment, decided that he was severely injured and suffering from shock and that he should be placed in the caboose of the train, made as comfortable as possible, and carried to a hospital for surgical treatment. He was accordingly placed on the train pursuant to the physician's own judg-

ment and advice, as stated by him upon the trial, and as soon as the necessary switching could be completed and the main line cleared of the obstructing cars, the train left for the City of Amory, a distance of fifty-nine miles, where a good surgeon was notified to meet the train at the station and to have an ambulance available. Dr. Parker accompanied the patient on the train, caused the fire in the caboose to be replenished with fuel so as to keep the car warm and comfortable, administered to the suffering of the injured man by giving him hypodermics of morphine until he died within eight or ten minutes after leaving Columbus, which was thirty-two miles from Aliceville, and the only stop made by the train on its run to Amory.

It was shown that there were good hospitals at Columbus, but the proof fails to disclose that the patient could have been removed from the train and placed in one of these hospitals in time to have obtained any substantial relief earlier than the hour at which he actually died, soon after the train left Columbus as aforesaid. Nor is it seriously contended that common humanity required that this be done; but it is the position of the appellee that the patient should have been placed in the local ambulance at Aliceville, Alabama, as soon as it could have been made available, and carried to a hospital at Macon, Mississippi, a distance of twenty-eight miles over a gravelled road, which, Dr. Parker testified, was usually bad at that time of the year, it being a night in February, and upon the theory that this would have afforded an opportunity for him to be given glucose and blood transfusions at such hospital within approximately one hour after leaving Aliceville, there being no local hospital facilities at that place.

When the train arrived at the City of Amory, the body was taken to an undertaking establishment, where it was discovered that the pelvis bone thereof had been so badly crushed or broken and the kidney area bruised

and badly injured that an accumulation of blood from hemorrhages had gathered in the abdominal cavity to the extent of one-half gallon in quantity, the withdrawal of which caused the whole left side of the body to collapse. Two physicians thereupon examined the body, and then stated that, in their opinion, nothing could have been done to save the life of the injured man even if he had been placed in a hospital immediately after the accident. Dr. Parker concurred in this view, and these three physicians were the only ones that testified at the trial who had seen the patient. There were other physicians, however, who testified that had the patient been carried by ambulance and placed in the hospital at Macon within about an hour after the accident, and given glucose and blood transfusions to relieve his shock, he would have had "a better chance to live," or would have "probably recovered," or that he would "likely have lived." The jury acting upon their testimony alone could have speculated or conjectured that the patient would have had some chance to live if the train crew had adopted this plan of handling the matter, assuming that the jury would have been justified in disregarding the common-sense view of the three physicians who had personally observed the extent of his injuries.

But, assuming that the train crew, instead of Dr. Parker, had taken full responsibility of undertaking to transport this injured employee to the hospital at Amory, where most of the employees on that division of the railroad sustaining personal injuries were accustomed to be treated by the surgeon there in charge, and assuming further that they used bad judgment in so doing and probably defeated his chance of living, the most that can be said of their course of conduct is that they used bad judgment in deciding what was best to be done under the circumstances. There is a vast difference between such a course and a failure to observe the dictates of common humanity. The injured man was no stranger to them, but

was their fellow workman. There existed every inducement for them to do what they thought was best for his comfort and well-being, and we find no fact or circumstance in the case to indicate that they were actuated by any spirit of indifference towards the dictates of common humanity in the situation with which they were confronted at the time.

In our opinion, the case is controlled by the principles announced in New Orleans & N. E. R. Co. v. Humphreys, 107 Miss. 396, 65 So. 497, 498, wherein the court assumed that the railroad company was under a duty to treat the trespasser there involved with ordinary humanity, and, further, that it had assumed charge of him in his injured condition; and then held that in refusing to transport him to Hattiesburg on the passenger train on which he had sustained the injury, and in calling a physician instead to treat him where he was left at Poplarville, the railroad employees had done "what was apparently the proper thing to do; even if they did not, there was nothing in their actions to authorize one to believe that they ignored the dictates of common humanity." In that case the physician testified that the man with the crushed leg should have been removed as early as possible after the injury was discovered, and that, in his opinion, the man would have survived had he been carried to Hattiesburg and placed in the hands of competent surgeons earlier than the hour at which he was later put on a freight train and carried there by the said physician. The court said that "If a mistake was made, it was a mistake of judgment, and for this mistake the railroad is not liable."

We are, therefore, of the opinion that a peremptory instruction should have been granted in favor of the railway company on both of the issues involved.

Reversed, and judgment here for the appellant on direct appeal, and affirmed on cross-appeal.